IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: ) | Case No. 12-60128 |
| ) | Chapter 13 |
| CINDY LOU MARKLEY, ) | Judge Russ Kendig |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| CINDY LOU MARKLEY, ) | Adv. Proc. No. 16-06034-RK |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DEPARTMENT OF TREASURY, ) | |
| INTERNAL REVENUE SERVICE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR
JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDMENT
AND INCORPORATED MEMORANDUM OF LAW**

The defendant United States of America, on behalf of the creditor Internal Revenue Service ("IRS"), respectfully moves the Court for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and Federal Rule of Bankruptcy Procedure 7012(b), or, alternatively, for summary judgment under Rules 56 and 7056 respectively.

As explained more fully below in the incorporated memorandum of law below, the complaint fails to state a claim that the IRS willfully violated the automatic stay because the stay terminated when the Court closed the debtor's case in March 2016 and was never reinstated. Alternatively, even if the stay had been reinstated (which it was not), the complaint still fails to state a claim for a *willful* violation of the stay, because the IRS was unaware the stay had been reinstated when it took the actions the debtor complains of. The debtor's willful stay violation claim also fails because she has not alleged, and cannot show, an actual injury from any stay

1

violations (and absent injury, she lacks standing to claim attorney's fees). The debtor likewise failed to state a claim under the exclusive remedy for IRS violations of bankruptcy discharges, 26 U.S.C. § 7433, because she did not allege exhaustion of her administrative remedies, and, regardless of the claim asserted, the IRS's debt was not discharged. Because the debtor has failed to state a claim for willful stay or discharge violations, the Court should grant the United States either judgment on the pleadings or summary judgment.

## MEMORANDUM OF LAW

### Background

On January 20, 2012, the debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. (*See generally* Bankr. Case Doc. 1.) On Schedule E attached to the petition, which sets out the Creditors Holding Unsecured Priority Claims, the debtor provided that the IRS was a creditor with a claim of $33,258.70. (*Id.* at 16.) The debtor listed the IRS's address as 433 North Summit St., Toledo, OH 43604-2638. (*Id.*) The debtor included this same address as the only address for the IRS in the creditor matrix. (*Id.* at 44.)

The proper address at which to provide the IRS notice of a bankruptcy was P.O. Box 7346, Philadelphia, PA 19101-7346. *See* United States Agency Addresses, U.S. BANKR. CT. N.D. OHIO, https://www.ohnb.uscourts.gov/united-states-agency-addresses ("Register of Agencies"). Information copies of bankruptcy filings also may be sent to the IRS at Insolvency Group 6, 1240 East Ninth St., Room 493, Cleveland, OH 44199. *See id.*

The IRS first learned about the debtor's bankruptcy on November 17, 2014, when the debtor called the IRS to discuss her bankruptcy proceeding. (*See* Declaration of Crystal Hardy ("Hardy Decl."), at ¶¶ 2, 4-6, attached as Exhibit 1.)

On December 12, 2014, the IRS filed an untimely proof of claim in support of its unsecured general claims of $31,477.86 (*See* Claim No. 14-1, at 3.) The bar date for the claims

of governmental entities had been July 18, 2012, (Bankr. Doc. 10, at 1), long before the IRS first received notice of the bankruptcy (Hardy Decl. at ¶¶ 2, 4-6).

On February 2, 2015, the debtor objected to the IRS's proof of claim as untimely filed, because the IRS filed its proof of claim after July 18, 2012. (*See* Bankr. Doc. 132.)

Because the debtor had not properly listed or scheduled the IRS's claim, or provided the IRS with any notice of the bankruptcy until November 2014, the IRS decided to rely on the non-dischargeable nature of its debt and to withdraw its proof of claim to preserve its ability to collect from the debtor after her bankruptcy closed. On April 10, 2015, the United States, on behalf of the IRS, responded to the debtor's objection to the IRS's claim by acknowledging the proof of claim had been filed after the bar date and by explaining that the IRS had not been properly served with notice of the bankruptcy, because notice was sent to a local IRS office rather than the address maintained on the Register of Agencies. (*See* Bankr. Doc. 144, at 1.) The debtor did not reply to the United States' response to her objection. Also on April 10, 2015, the United States moved to withdraw the IRS's proof of claim. (*See* Bankr. Doc. 145.) The Court granted that motion on April 27, 2015, (*see* Bankr. Doc. 149.), and on the same date, the IRS withdrew its claim (*see* Bankr. Doc. 150).

On March 16, 2016, the Chapter 13 trustee filed the final report and account from the debtor's bankruptcy. (*See* Bankr. Doc. 167.) The final report and account shows that the IRS received no payment on its debt from the plan payments made during the bankruptcy. (*See id.* at 2.)

On March 17, 2016, the Court closed the debtor's bankruptcy case without discharge because the debtor had not filed a certification proving she had paid all domestic support obligations due, as required by 11 U.S.C. § 1328(a). (*See* Bankr. Doc. 168.) The Certificate of Service for the notice of case closing without discharge was sent to the IRS via email by the

Bankruptcy Noticing Center to the email address associated with one of the two addresses listed for the IRS in the Register of Agencies. (*See* Bankr. Doc. 169, at 1 (second to last entry on the page).) IRS records confirm that, on March 25, 2016, the IRS received notice that the case had been closed without discharge. (*See* Hardy Decl. at ¶ 7.)

The automatic stay terminated on March 17, 2016, when the Court closed the debtor's case. 11 U.S.C. § 362(c)(2)(A).

On March 21, 2016, the debtor moved to reopen her Chapter 13 case to file her required certification. (*See* Bankr. Doc. 172, at 1.) In this motion, the debtor moved the Court "to reopen this case in order for Debtor to file Debtor's Certification Regarding Domestic Support Obligation." (*Id.*) The debtor did not allege that the closure of the case was legal error but rather asked the Court to exercise discretion to allow her to cure the problem, and did not ask the Court to vacate the earlier case closure order or to reinstate the automatic stay. (*See id.*) The Certificate of Service that debtor's counsel included with the motion reflects that only two parties were sent notice of the motion: the Chapter 13 trustee via the ECF system, and the debtor via U.S. mail. (*See id.* at 2.) IRS records confirm what the Certificate of Service reveals: the IRS received no notice of the debtor's motion to reopen her case. (*See* Hardy Decl. at ¶¶ 7-10.)

On April 19, 2016, the Court granted the debtor's motion to reopen. (*See* Bankr. Doc. 173.) The Court's order granting the motion to reopen did not vacate the earlier case closure, and did not provide for the reinstatement of the stay, which had terminated on March 17, 2016. (*See id.*) The Certificate of Service associated with this order reflects that the IRS was not sent notice via first-class mail or electronic notice by the Bankruptcy Noticing Center. (*See* Bankr. Doc. 177, at 1.) Instead, the certificate reflects that the IRS was a "bypassed recipient[]." (*See id.*)

4

16-06034-rk    Doc 6    FILED 11/21/16    ENTERED 11/21/16 20:20:43    Page 4 of 19

Although an automated electronic notice was sent via CM/ECF to the Assistant United States Attorney ("AUSA") who had moved to withdraw the IRS's claim and filed a response on behalf of the IRS to the debtor's objection to its proof of claim in April 2015 (*see id.*), this was not effective notice to the IRS and the case reopening was not communicated in any way to the IRS. The U.S. Attorney's Office ("USAO") only has the authority to represent the IRS when the IRS refers a specific contested matter to the USAO, and it treats as closed the cases for which the contested matter assigned to the USAO has been completed. (*See* Declaration of Suzana Koch ("Koch Decl.") at ¶¶ 2-3, attached as Exhibit 2.) Once the United States filed its response to the debtor's objection and motion to withdraw the IRS's proof of claim, and the Court granted that motion, the case was closed in the USAO in accordance with that office's normal routine and practice. (*Id.* at ¶ 6.) Thereafter, automatic electronic notices related to the bankruptcy were auto-forwarded to the USAO's closed cases folder. (*Id.*) The AUSA to whose attention the CM/ECF notice of the order was sent did not review any notices from the bankruptcy that were sent to the closed cases folder until recently. (*Id.*) Indeed, until November 2016, the AUSA was unaware of the March 2016 case closure without discharge and subsequent April 2016 case reopening, and she did not inform the IRS about either of those events. (*Id.* at ¶ 7.) IRS records again confirm that the IRS did not receive notice that the Court had reopened the debtor's bankruptcy case. (*See* Hardy Decl. at ¶¶ 7-10.)

On April 19, 2016, the debtor filed the domestic support obligation certification required by 11 U.S.C. § 1328(a), finally completing the prerequisites to obtaining a discharge. (*See* Bankr. Doc. 174.)

On April 20, 2016, the Court provided notice of its intent to enter an order of discharge, and it entered the discharge on May 10, 2016. (*See* Bankr. Docs. 176, 179.) The Certificate of Service for the order of discharge reflects that notice was sent to the IRS by the Bankruptcy

5

Noticing Center to the email address associated with one of the two proper addresses recognized in the register of agencies maintained on the Court's website. (*See* Bankr. Doc. 179, at 1 (second to last entry on page).) IRS records confirm that, on May 11, 2016, the IRS received notice of the discharge. (Hardy Decl. at ¶ 11.)

IRS records reflect that the IRS received notice of the March 17, 2016, case closure without discharge and the May 10, 2016 order of discharge. (*See* Hardy Decl. at ¶¶ 7, 11.) IRS records do not reflect the IRS receiving notice that, in the interim between March 17 and May 10, 2016, the debtor had moved to reopen the bankruptcy case and the Court had granted the motion. (*See id.* at ¶¶ 7-10.) The IRS thus was unaware that the debtor's case had been reopened prior to receiving notice of her discharge in May 2016.

On April 18, 2016, the Court had not yet reopened the debtor's bankruptcy case and the IRS remained unaware that the debtor was seeking to have the case reopened. (*See* Bankr. Doc. 179; Hardy Decl. at ¶ 10.) Understanding that the debtor's bankruptcy had been closed without discharge, on April 18, 2016, the IRS sent the debtor a Notice of Intent to Levy the debtor's state tax refund or other property to pay the outstanding tax liabilities, including penalties and interest, owed by the debtor for the tax years 2005 to 2007. (*See* Exhibit A to the Complaint, Doc. 1-2; Hardy Decl. at ¶¶ 7, 10.)

On May 5 and May 6, 2016, the IRS was unaware that the Court had reopened the debtor's bankruptcy on April 19, 2016. (*See* Hardy Decl. at ¶ 10.) Understanding that the debtor's bankruptcy had been closed without discharge, on May 5, 2016, the IRS sent the debtor a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. (*See* Exhibit B to the Complaint, Doc. 1-3; Hardy Decl. at ¶¶ 7, 10.) With the same understanding, on May 6, 2015, the IRS filed a Notice of Federal Tax Lien with the Recorder for Crawford County, Ohio. (*See* Exhibit C to the Complaint, Doc. 1-4; Hardy Decl. at ¶¶ 7, 10.)

On June 13, 2016, after receiving notice that the Court had granted the debtor a discharge on May 10, 2016, the IRS mistakenly abated the taxes, penalties, and interest owed by the debtor for the tax years 2005 to 2007. (*See* Hardy Decl. at ¶ 13.) That same day, the IRS realized that the abatement had been made in error, because the taxes and interest had not been discharged (*see id.*), and the next day, June 14, 2016, the IRS reversed the mistaken abatement (*id.* at ¶ 14). However, the mistaken abatement triggered an automatic release of the IRS's liens, which occurred on June 15, 2013. (*See* Hardy Decl. at ¶ 13; Complaint at ¶ 15, Doc. 1, at 3.) The IRS then had to revoke its earlier mistaken release of its liens, a process finally completed on August 11, 2015, when it filed a Revocation of Certificate of Release of Federal Tax Lien with the Recorder for Crawford County, Ohio. (*See* Exhibit D to the Complaint, Doc. 1-5; Hardy Decl. at ¶ 15.)

## I. Applicable Standard of Review and Law.

Federal Rule of Bankruptcy Procedure 7012(b) makes Federal Rule of Civil Procedure 12(b)-(i) applicable in bankruptcy cases. Rule 12(c), in turn, allows a party to move for judgment on the pleadings once the pleadings are closed. "The standard of review for a [motion for] judgment on the pleadings is the same as that for a motion to dismiss" for failure to state a claim. *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). "In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Taylor v. KeyCorp*, 678 F. Supp. 2d 633, 637 (N.D. Ohio 2009). In ruling on a motion to dismiss, a court may consider "matters of public record [which includes anything of which the court can take judicial notice], orders, items appearing in the record of the case, and exhibits attached to the complaint." *Id.* at 638. A complaint must be dismissed when the claims contained therein are not plausible and when "the complaint, however factually detailed, fails to

state a claim as a matter of law." *In re City of Detroit, Mich.*, —F.3d—, 2016 WL 6677715, at *10 (6th Cir. Nov. 14, 2016).

Alternatively, the Court could grant summary judgment, which would allow it to consider facts outside the complaint and its attachments, public record, orders, and case record. Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable in bankruptcy cases. Rule 56(a), in turn, authorizes a party to move for summary judgment, which the court "shall grant . . . if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II. Count I For Violation Of The Automatic Stay Fails To State A Claim Upon Which Relief Can Be Granted Because The Stay Terminated When The Case Was Closed In March 2016 And It Was Never Reinstated.

As Count I of the complaint, the debtor alleged that the IRS willfully violated the automatic stay in April and May 2016. The debtor has failed to state a claim as a matter of law because the stay terminated in March 2016 and was never reinstated, which means the actions that the debtor complains of were taken at a time when the stay was no longer in place.

Under § 362 of the Bankruptcy Code, the filing of a bankruptcy petition "operates as a stay" of, among other things, "any act to collect, assess, or recover a claim against the debtor that arose before the commence of the case under this title." 11 U.S.C. § 362(a)(6). The stay "continues until the earliest of–(A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharged is granted or denied." 11 U.S.C. § 362(c)(2). Here, facts of which this Court can take judicial notice show that the stay arose on January 20, 2012, when the debtor filed her Chapter 13 petition (Bankr. Doc. 1), and the stay terminated on March 17, 2016, when the Court closed the debtor's case (Bankr. Doc. 168.)

8

Reopening a bankruptcy case does not automatically reinstate the automatic stay. The great weight of the authority on this issue holds, to the contrary, that merely reopening a case does not reinstate the stay and some courts even have held that they have no ability to reinstate a stay in light of the clear language of § 362(c)(2) detailing when a stay terminates. *See, e.g.*, *In re Brumfiel*, 514 B.R. 637, 643 (Bankr. D. Colo. 2014); *In re Burke*, 198 B.R. 412, 416 (Bankr. S.D. Ga. 1996); *Kieu v. C.I.R.*, 105 T.C. 387, 395 (1995); *Allison v. C.I.R.*, 97 T.C. 544, 547-48 (1991); *In re Gruetzmacher*, 145 B.R. 270, 273-74 (Bankr. W.D. Wis. 1991); *In re Trevino*, 78 B.R. 29, 37 (Bankr. M.D. Pa. 1987). Only when the court *vacates* the closure or dismissal order, based not on discretion but on a motion demonstrating that the order should not have been entered, does the stay get reinstated, and in those cases there is a good reason for reinstatement, such as the need to prevent creditors' actions to impede the debtor's ability to continue making Chapter 13 plan payments or the need to keep the creditors from disposing of property of the estate while the debtor is trying to confirm a Chapter 11 plan. *See In re Diviney*, 225 B.R. 762, 770 (B.A.P. 10th Cir. 1998) (dismissal order was vacated and stay was needed to allow debtor to continue making Chapter 13 plan payments); *In re Hakim*, 244 B.R. 820, (Bankr. N.D. Cal. 1999) (dismissal order was vacated prior to Chapter 11 plan confirmation and stay was needed to prevent creditor self-help until plan could be confirmed). The distinction between mere case closing followed by reopening versus vacatur of a dismissal or closure order is key. Vacatur is "[t]he act of annulling or setting aside," Black's Law Dictionary (10th ed. 2014), and it restores a case to the position it had prior to entry of the vacated order. *See In re Brumfiel*, 514 B.R. at 643. By contrast, "reopening is a ministerial act that has no substantive effect in and of itself." *Id.* (internal quotation marks omitted).

Here, the stay was not reinstated when the Court reopened the debtor's bankruptcy case. The debtor's motion to reopen did not seek vacatur of the case closure order on the premise that

it was entered in error, and did not request reinstatement of the stay; it merely asked the Court in its discretion to reopen the case for the purpose of allowing the debtor to file her § 1328(a) certification. (Bankr. Doc. 172, at 1.) The Court's order granting the motion to reopen likewise did not vacate the earlier closure order and did not provide for reinstatement of the stay; it simply stated that the motion "is hereby granted and the case is reopened." (Bankr. Doc. 173, at 1.) The stay thus terminated on March 17, 2016, 11 U.S.C. § 362(c)(2)(A), and it was not reinstated by the Court reopening the debtor's bankruptcy case, *see, e.g.*, *In re Brumfiel*, 514 B.R. at 643-44. The reopening was a ministerial act that enabled the debtor to take the one step left to get her discharge, filing her § 1328(a) certification.

Indeed, there would have been no purpose for the Court to reinstate the stay in the debtor's bankruptcy. After vacatur of a dismissal order, a stay may need to be reinstated to prevent creditors from taking actions that will impede the debtor's ability to complete its bankruptcy. *See In re Diviney*, 225 B.R. at 770 (stay was needed to allow debtor to continue making Chapter 13 plan payments); *In re Hakim*, 244 B.R. at 822 (stay was needed to prevent creditor self-help until Chapter 11 plan was confirmed). By contrast, the debtor here had finished making all of her plan payments when her case was closed. (*See* Bankr. Doc. 167.) Her case was closed because the debtor did not timely file her § 1328(a) certification. (Bankr. Doc. 168.) Reinstating the stay was not necessary to allow the debtor to finalize the steps needed to get her discharge; all that was needed was for her to file her § 1328(a) certification. And the entire purpose for reopening the case was to enable the debtor to receive a discharge that would itself have lifted the stay if it had been entered in the first place. That explains why the debtor did not ask for the stay to be reinstated; she asked just for the case to be reopened so that she could file her certification and thereby receive her discharge. (Bankr. Doc. 172, at 1.)

Because the stay terminated in March 2016, the debtor failed as a matter of law to state a claim for willful violation of the stay by the IRS in April and May 2016, and the Court should grant the United States judgment on the pleadings on Count I.

**III.     Count II For Violation Of The Discharge Injunction Fails To State A Claim Upon Which Relief Can Be Granted Because The Debtor Has Not Complied With Section 7433 Of The Internal Revenue Code And, In Any Event, The IRS's Debt Was Not Discharged.**

In Count II of the complaint, the debtor alleges that the IRS willfully violated her discharge, in violation of 11 U.S.C. § 524. However, the debtor has failed as a matter to law to state a claim for damages against the IRS, because the only mechanism to obtain damages for the IRS's willful violation of a bankruptcy discharge is via a claim under 26 U.S.C. § 7433(e) and the debtor has not alleged that she exhausted her administrative remedies with the IRS, as required for such a claim. Moreover, although the Court need not reach the issue, the IRS's debt was non-dischargeable under § 523(a)(3)(A), and so the IRS retained its ability to collect its debt after the debtor obtained a discharge.

Section 524 explains the effect of a discharge under the Bankruptcy Code. Among other effects, a discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset [any debt discharged under § 1328] as a personal liability of the debtor[.]" 11 U.S.C. § 524(a)(2). A discharge likewise operates as an injunction against attempts to recover a discharged debt from property acquired by the debtor after the filing of the petition. *See id.* § 524(a)(3).

Section 7433(e)(1) of the Internal Revenue Code provides that "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of section . . . 524 (relating to effect of discharge) of Title 11 . . ., such taxpayer may petition the bankruptcy court to recover damages against the United States." 26 U.S.C. § 7433(e)(1). As to alleged willful violations of § 524,

11

"such petition shall be the exclusive remedy for recovering damages resulting from such actions." *Id.* § 7433(e)(2)(A). Because § 7433 provides the exclusive remedy for willful violations of § 524 by the IRS, a debtor must comply with the requirements of § 7433 to state a claim for relief. *See Kovacs v. United States*, 614 F.3d 666, 673-74 (7th Cir. 2010) (affirming district court determination that debtors had to comply with § 7433's jurisdictional provisions to recover for IRS's willful violation of discharge injunction, in light of "unequivocal exclusivity provision" of § 7433). A court cannot award a claimant damages under § 7433 unless it "determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1). A court must dismiss a claim for relief available under § 7433 where the plaintiff did not exhaust her administrative remedies. *See Hoogerheide v. I.R.S.*, 637 F.3d 634, 639 (6th Cir. 2011).

Here, the debtor failed as a matter of law to state a claim that the IRS willfully violated her discharge, because she has sought relief under § 524, and not under § 7433(e), her exclusive remedy for such a claim. *See* 26 U.S.C. § 7433(e)(2)(A); *Kovacs*, 614 F.3d at 673. The debtor cannot obtain relief for the alleged violation through an alternative means, such as a request for an order under 11 U.S.C. § 105. *See Kovacs*, 614 F.3d at 672-73 (rejecting argument that bankruptcy court could have provided relief for willful violation of discharge by IRS under § 105). The debtor's allegations related to Count II do not state a claim for relief under § 7433, which requires that she have exhausted her administrative remedies with the IRS. Exhaustion requires the debtor to submit an administrative claim to the IRS that complies with the detailed requirements set out in 26 C.F.R. § 301.7433-1(e). The "courts lack discretion to waive" the "congressionally established exhaustion imperative" contained in § 7433(d). *See Hoogerheide*, 637 F.3d at 639. As a result, the Court must grant the United States judgment on the pleadings as to Count II of the complaint because, by failing to allege exhaustion of her administrative

remedies with the IRS via filing a claim that complies with 26 C.F.R. § 301.7433-1(e), the debtor has not stated a claim for damages for any willful violation of the discharge by the IRS. *See Hoogerheide*, 637 F.3d at 639.

Consideration of § 7433 should end the Court's analysis of Count II. But even if the Court were inclined to proceed further, Count II fails for the additional reason that the IRS's debt was non-dischargeable. Section 1328(a) provides "a discharge of all debts provided for the plan or disallowed under section 502 of this title, except any debt . . . (2) of the kind specified in . . . paragraph . . . (3) . . . of section 523(a)." 11 U.S.C. § 1328(a)(2). Section 523(a)(3)(A), in turn, excepts from discharge any debt "neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit . . . if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing." Providing an "incorrect address" for a creditor "gives rise to a rebuttable presumption that the creditor was not listed or scheduled within the meaning of § 523(a)(3)." *Stull v. Holt (In re Holt)*, 102 B.R. 116, 119 (Bankr. S.D. Ohio 1989); *see also Beverly Lumber Co. v. Nicholson (In re Nicholson)*, 170 B.R. 153, 155 (Bankr. W.D. Mo. 1994). Once an inaccurate address is shown, the debtor bears the burden of adducing evidence that "the inaccuracy was justified and was not the result of a lack of reasonable diligence." *In re Holt*, 102 B.R. at 119. The debtor likewise bears the burden of proof "to show that a creditor had 'notice or actual knowledge' under § 523(a)(3)" in time to timely file a proof of claim. *In re Scassa*, 2009 WL 1586566, at *5 (Bankr. N.D. Ohio Jan. 16, 2009).

Here, the IRS's debt is non-dischargeable under § 523(a)(3)(A), and so the IRS did not violate the debtor's discharge by recommencing collection activity post-discharge. First, there is a presumption that the IRS's debt was "neither listed nor scheduled" because the debtor provided

an "incorrect address" for the IRS. *See In re Holt*, 102 B.R. at 119. The correct address was readily available to the debtor or her counsel "had they made a reasonable attempt to discover it." *In re Lorenzen*, 21 B.R. 129, 131 (Bankr. N.D. Ohio 1982). Specifically, the Register of Agencies that provides the correct address for the IRS is readily available for free on the Court's website. The debtor bears the burden to rebut the presumption the IRS's debt was not listed or scheduled, and she cannot meet that burden because the inaccuracy was not justified and resulted from a lack of diligence. *See In re Holt*, 102 B.R. at 119. Second, the IRS's debt falls within § 523(a)(3)(A) because it is not a debt of the kinds specified by subsections (2), (4), or (6) of section 523, which relate to debts arising from, among other things, fraud (ordinary or fiduciary) and malicious injury. Third, the IRS lacked "notice or actual knowledge of the case in time" to timely file a proof of claim. For a proof of claim by the IRS to have been timely filed, it would have had to file by July 18, 2012, the bar date for governmental units. But the IRS did not receive notice or have actual knowledge of the bankruptcy until November 17, 2014 (Hardy Decl. at ¶¶ 2, 4-6)—more than two years after the deadline to timely file a proof of claim had passed.[1] The IRS's debt thus was excepted from discharge under § 523(a)(3)(A).

Because the debtor has not stated a claim for relief under § 7433, the exclusive remedy for the IRS's willful violation of a discharge, and because the IRS's debt was non-dischargeable, the Court should grant judgment on the pleadings to the United States as to Count II.

---

[1] That the IRS filed an *untimely* proof of claim when it eventually received notice of the bankruptcy is irrelevant to the § 523 analysis. And because the untimely proof of claim was withdrawn, it "is a legal nullity and the parties are left as if the claim ha[d] never been filed." *In re Cruisephone, Inc.*, 278 B.R. 325, 333 (Bankr. E.D.N.Y. 2002).

## IV. Count I For Violation Of The Automatic Stay Fails To State A Claim Upon Which Relief Can Be Granted Because Any Arguable Violation Was Inadvertent And The Debtor Suffered No Actual Damages.

Even if the automatic stay had been reinstated when the Court reopened the debtor's bankruptcy case in April 2016 (which it was not), the Court nonetheless should grant judgment on Count I to the United States because the debtor has failed as a matter of law to state a claim for willful violation of the stay for two additional reasons: the IRS's violation was not willful, and the debtor suffered no compensable injury from any violations. Each of these reasons stands as an independent bar to the debtor's claim for willful violation of the stay.

Section 362(k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). To recover damages under this section, "the debtor must prove (1) that the violation of the stay was 'willful'; and (2) that the individual seeking damages was actually injured by the violation of the stay." *United States v. Mathews (In re Mathews)*, 209 B.R. 218, 220 (B.A.P. 6th Cir. 1997). A willful violation occurs "when the creditor knew of the stay and violated the stay by an intentional act." *In re Harris*, 374 B.R. 611, 615 (Bankr. N.D. Ohio 2007). Actual damages for a willful violation of the automatic stay do not include emotional distress. *See United States v. Harchar*, 331 B.R. 720, 732-33 (N.D. Ohio 2005). The United States has provided a limited waiver of its sovereign immunity with respect to section 362, but that waiver does not extend to awards of punitive damages. *See* 11 U.S.C § 106(a)(3).

Even if the stay had been reinstated when the Court reopened the debtor's bankruptcy case (which, as explained above, it was not), the IRS inadvertently, not willfully, violated the stay. Willfulness requires that "the creditor knew of the stay." *In re Harris*, 374 B.R. at 615. However, the IRS was unaware that the stay had been reinstated. On March 25, 2016, the IRS

15

received notice that the debtor's bankruptcy case had been closed without discharge. (Hardy Decl. at ¶ 7.) The IRS next received a notice related to the debtor's bankruptcy on May 11, 2016, when the IRS became aware that the debtor had received a discharge. (*Id.* at ¶ 11.) Between March and May 2016, the IRS was unaware that the debtor moved to reopen her case, or that the Court eventually granted that motion. (*Id.* at ¶¶ 7-10; Bankr. Doc. 172, at 2; Bankr. Doc. 177, at 1.) Although ECF notice of the case reopening was sent to the AUSA who had represented the IRS on the debtor's objection to the IRS's proof of claim and motion to withdraw the claim, the USAO's authority to represent the IRS in the bankruptcy case had ended when the Court granted the motion, at which time the case was closed and thereafter ECF notices from the case were sent to the closed case folder. (Koch Decl. at ¶¶ 2-3, 6.) The AUSA was unaware of the March 2016 case closure and subsequent April 2016 case reopening until November 2016, and did not advise the IRS of those events. (*Id.* at ¶ 7.) Moreover, even if the IRS had been aware that the case was reopened (which it was not), that would not have been sufficient for it to know that the stay had been reinstated, because the reopening order did not vacate the earlier closure and it did not provide for the reinstatement of the stay. As explained above in Part II, the great weight of authority on the issue indicates that mere reopening does not reinstate the stay, and thus the reopening order would not have informed the IRS that the stay was back in place. Either way, the IRS was unaware the stay was in place when it took the actions the debtor complains of on April 18, May 5, and May 6, 2016. Because the IRS did not know of the stay on those dates, *see In re Harris*, 374 B.R. 611 at 615, the IRS did not willfully violate the stay. For that reason, the Court should grant judgment to the United States on Count I of the complaint.

The Court should grant judgment to the United States on Count I for the independent reason that the debtor has not alleged and cannot establish the second element of a claim under § 362(k): an actual injury. *See In re Mathews*, 209 B.R. at 220. Even assuming that the stay had

16

been reinstated and that the IRS was aware the stay had been reinstated (neither of which are true), the actions the IRS took in April and May 2016 would have been proper if they had occurred after the Court entered the debtor's discharge on May 10, 2016, because the IRS's debt is non-dischargeable under § 523(a)(3)(A). In other words, the IRS could have taken those actions if it had simply waited 22, 5, and 4 days longer to act. In the complaint, the debtor made no attempt to allege an actual injury (simply requesting "actual damages" without describing any injury) and for good reason—the debtor cannot seriously contend she suffered an actual injury from the IRS recommencing collection activities three weeks before it became entitled to do so. Perhaps the debtor suffered some minor emotional distress by having collection recommence 22 days sooner than she expected, but emotional distress is not recoverable as actual damages under § 362. *See United States v. Harchar*, 331 B.R. 720, 732-33 (N.D. Ohio 2005).[2]

The lack of injury to the debtor is made even clearer by what prompted the IRS to inadvertently begin collection 22 days early: Despite making all of her required plan payments, the debtor neglected to file the § 1328(a) certification required for the Court to grant a discharge. (Bankr. Doc. 168.) Once the Court reopened the bankruptcy and the debtor filed her certification on April 19, 2016, it only took the Court 21 days, until May 10, 2016, to enter the order of discharge. But for the missing § 1328(a) certification, discharge could have been entered on March 16, 2016, nearly two months earlier and more than a month before the IRS recommenced collection. Had the debtor timely filed her certification, she would have received a discharge sooner and the IRS's actions would have been permissible collection activity.

---

[2] Punitive damages are similarly unavailable here because there is no underlying compensable injury, the United States has not waived sovereign immunity in bankruptcy cases for awards of punitive damages, 11 U.S.C. § 106(a)(3), and the debtor cannot show the type of conduct that would provide a basis for punitive damages, *see In re Newell*, 117 B.R. 323, 325 (Bankr. S.D. Ohio 1990).

The only actual injury that the debtor may have suffered derives from the failure to properly list and schedule the IRS's claim, not any actions taken by the IRS. The IRS's debt would have been discharged if the debtor and her counsel had listed and scheduled its claim or provided notice to the IRS of the case in time for it to file a proof of claim by July 18, 2012. The fact that the debtor was unable to discharge the IRS's claim, and not the IRS's slightly premature recommencement of collection, is the only conceivable injury to the debtor in this case. Whatever remedies the debtor may have for that injury, they do not include a § 362 claim against the IRS.

Even if the stay were reinstated after the debtor's case was reopened (which it was not), because the IRS inadvertently (not willfully) violated the stay and the debtor suffered no injury from its violations (inadvertent or willful), the Court should grant judgment to the United States on Count I of the complaint.

**Conclusion**

Because the debtor has not alleged, and cannot establish, that the IRS willfully violated the automatic stay or the discharge, Court should grant the United States judgment on the pleadings or summary judgment.

Respectfully submitted,

CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

*/s/ Lauren E. Hume*
Lauren E. Hume
DC Bar 1024186
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 307-2279
Fax: (202) 514-5238
Email: Lauren.E.Hume@usdoj.gov

18

# CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2016, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all participants.

>*/s/ Lauren E. Hume*
>Lauren E. Hume
>DC Bar 1024186
>Trial Attorney, Tax Division
>U.S. Department of Justice
>P.O. Box 55, Ben Franklin Station
>Washington, D.C. 20044
>Tel.: (202) 307-2279
>Fax: (202) 514-5238
>Email: Lauren.E.Hume@usdoj.gov